**Commonwealth v. Langenfelder**

*John H. Bream,* for appellant.

*Edward T. Baker,* for Commonwealth.

HERMAN, J., August 30, 1965. — In this case involving a refund of tax under the Selective Sales and Use Tax Act of March 6, 1956, P. L. (1955) 1228, as amended, 72 PS §3403-1, et seq., we are faced with three questions:

1. May the Board of Finance and Revenue, after it has issued an order granting a refund, hold a rehearing and deny the petition for a refund, if done within the statutory period in which the board may act finally?

2. Is a construction contractor a proper party to bring the action for refund, where sales and use taxes are included in the contract price, and where the contract further provides that if the contractor is not required to pay the tax or bear the burden or obtain a refund of such tax, such relief or refund shall inure to the benefit of the other party to the contract and not the construction contractor?

3. Where neither party to a construction contract is a public utility, is the public utility exemption in the Selective Sales and Use Tax Act applicable for materials and supplies purchased by the contractor, when the project does not become part of a public utility facility until after its completion?

The parties have filed a stipulation of facts, and we will adopt such stipulation as our finding of facts, making reference hereafter to such facts as are required for a better understanding of our opinion. The parties have likewise agreed that the case be tried without a jury, pursuant to the Act of April 22, 1874, P. L. 109, 12 PS §688.

## DISCUSSION

### I.

The first question must be answered in the affirmative. Although The Fiscal Code of April 9, 1929, P. L. 343, as amended, in setting forth the powers and duties of the Board of Finance and Revenue, does not specifically provide the power to rehear a case, and although in such a situation some courts have felt this indicates a lack of such power, we are not of that opinion.

Davis, in his treatise on administrative law (2 Davis, Administrative Law Treatise, §18.09 (1958)), has cogently pointed out that "Every tribunal, judicial or administrative, has some power to correct its own errors or otherwise appropriately to modify its judgment, decree, or order".

It is often stated that flexibility is much to be desired in administrative action to allow the full utilization of the expertise of the particular agency. To say that an administrative agency does not have the inherent power to correct mistaken decisions without resort to the courts would "harden the arteries of administrative procedure": Spencer v. United States, 102 F. Supp. 774, 777 (Ct. Cl., 1952).

It seems that the Board of Finance and Revenue, although rehearings are rarely granted, 36 Temp. L. Q. 443 (1963), recognized the advisability of making provision for such rehearing when, pursuant to its power to adopt rules for its proceedings (The Fiscal Code of April 9, 1929, P. L. 343, art. I, sec. 6, 72 PS §6), it adopted rule 9, which provides that "Any request for rehearing of a petition for refund shall be filed within six months of the action of the Board".

The only case that we can find which concerned the right of the Board of Finance and Revenue to rehear a matter or to assert any further jurisdiction after its determination is Culligan Soft Water Service, Inc. v. Board of Finance and Revenue, 19 D. & C. 2d 232, 73 Dauph. 228 (1959). As we view it, that case is no authority one way or the other for the problem which confronts us here, because there the case was in equity and held only that the Board of Finance and Revenue would not be *preliminarily enjoined* from holding such rehearing and asserting further jurisdiction. The language there, however, suggests to us that then, as now, it was the opinion of this court that the board does have the right it here exercised.

Section 554 of the Selective Sales and Use Tax Act of March 6, 1956, P. L. 1228, as amended, 72 PS §3403-554, in dealing with refunds, provides that the Board of Finance and Revenue shall act "finally" in disposing of petitions for refund within six months after they have been received, and nowhere in this act or in The Fiscal Code do we find anything prohibiting a rehearing. In the instant case, the petition was filed on September 25, 1963, and on February 28, 1964, after the *re*hearing, but well within the six-month period, the order denying the refund was issued.

The first action of the board, and the one which granted the refund, was taken on December 19, 1963, and within the 60 days provided by section 555 of the Selec-

tive Sales and Use Tax Act, as added, 72 PS §3403-555, for appeals to this court. The Board of Finance and Revenue, on petition of the Bureau of Sales and Use Tax of the Department of Revenue, granted the rehearing. After the rehearing (and Langenfelder raises no objection concerning the type of hearing, or with the conduct thereof), the action of the board which is here appealed from was taken.

Although Langenfelder was, of course, disappointed by the second action of the board, we cannot see how it was harmed in any way. The case of West Penn Power Company v. Pennsylvania Public Utility Commission, 174 Pa. Superior Ct. 123 (1953), on which appellant relies, holds only that an administrative body cannot change its determination without observing the requirements of due process. Here there was no question of deprivation of due process.

## II.

The tax in the amount of $17,057.92, for which Langenfelder seeks a refund, was the sales tax voluntarily paid by it to its vendors between June 1961 and December 31, 1962, on the purchase of materials and supplies used by it in the construction of certain facilities for the United States government, under a construction contract dated April 17, 1961, for the "Construction of the Relocated Pennsylvania Railroad and Erie Railroad, First District, and Appurtenant Work, Shenango River Reservoir, Pennsylvania".

Basically, the contract provided that Langenfelder would construct some 7.5 miles of relocated roadbed and build certain bridges over the Shenango River and Pine Creek for the railroads.[1] After the construction

---

[1] It has been stipulated that the United States government, in furtherance of its Shenango River Reservoir project, in Warren County, Pa., took, by eminent domain, several miles of the railroads' lands and as part of the compensation for such taking agreed to construct alternate railroad lines bypassing the project site.

was completed and accepted by the railroads, the Pennsylvania Railroad Company was to construct its new track, signal and communication facilities and transfer rail traffic to the relocated line.

It has been stipulated [2] by the parties that:

"Under Clause 2 (No. 30) of Schedule A of the contract, it was provided that if Langenfelder is not required to pay or bear the burden, or obtains a refund of any tax which was included in the contract price, such amount of relief, or such refund, shall inure or shall be paid to the Federal Government.

"The tax paid by Langenfelder which is now in question was a part of the contract price originally submitted by Langenfelder to the Federal Government. Langenfelder has not obtained an assignment of the Federal Government's right to such refund or relief, nor has Langenfelder paid over to the Federal Government, or has deleted from its contract price the amount of tax presently in question".

The Commonwealth contends that under the facts of this case, Langenfelder is not the proper party to bring the action for a refund.

It is conceded that section 553 of the act provides, in part, that "the refund or credit of tax, interest or penalty provided for by section 552 shall be made only where the person who has actually paid the tax files a petition for refund . . .", but it should also be noted that section 552 providing for the refund states that "Such refunds shall be made to the person, his heirs, successors, *assigns*[3] or other personal representatives, who actually paid the tax. . . ." It should further be borne in mind that section 553(A), part of which is quoted above, actually reads, in pertinent part:

"Except as provided for in . . . subsection . . . (d) of this section, the refund or credit of tax, interest or

---

[2] Stipulation of fact no. 18.

[3] Emphasis ours throughout.

penalty provided for by section 552 shall be made only where the person who has actually paid the tax files a petition for refund with the department within eightteen months of the actual payment of the tax to the Commonwealth".

It is under subsection (d) of section 553 that the instant action is brought, and that subsection does not state who shall file the petition.

We fail to find any provision in the act prohibiting such an assignment as was accomplished here.

By the weight of authority, an assignment of a claim for a tax refund is sustained where there is no statute prohibiting assignments of claims against the State. See Annot., 134 A. L. R. 1202 (1941). And, contrary to appellant's contention, the fact that no refund was due when the contract between Langenfelder and the United States was entered into is no bar to such an assignment. See 3 P. L. Encyc., *Assignments* §4, where it is said that not only choses in action and contingent interests and expectancies, but also "things which have no present actual or potential existence, but rest in mere possibility" are assignable in equity.

In Federal Deposit Ins. Corp. v. Board of Finance and Revenue of Commonwealth of Pennsylvania, 61 Dauph. 427 (1950), one of the matters dealt with by Judge Richards, of this court, was whether an assignment of a claim for refund of taxes erroneously paid to the Commonwealth was proper. This court there held that where there is no statute specifically prohibiting the assignment of a claim for such a refund, an assignment is permissible.

In 84 C. J. S. Taxation §639 (1954), it is stated that "In general, the proper plaintiff in an action to recover taxes paid is the person ultimately entitled to the money if recovered". See also Furman University v. Livingston, 244 S. C. 200, 136 S. E. 2d 254, 256 (1964), where it is said:

"It is fundamental that one without interest in the subject matter of a law suit has no legal standing to prosecute it. *Accordingly, a person who has no financial interest in taxes alleged to have been erroneously collected has no legal standing to sue for their refund".* (Italics supplied).

In Chrysler Corp. v. City of New Orleans, 243 La. 498, 145 So. 2d 11 (1962), the facts were strikingly similar to those in the instant case. There, the Chrysler Company had entered into a contract with the United States government for the production of tank engines in a plant owned by the United States government and leased to Chrysler. As part of the agreement, Chrysler modified and equipped the plant, and in so doing became, apparently, subject to a sales and use tax in favor of the City of New Orleans. There was serious doubt as to whether any tax was due, because title to the personalty purchased vested immediately in the United States government. But, on the instructions of the United States government, Chrysler paid the tax, and the United States government reimbursed Chrysler and became ultimately entitled to any money recovered. In suit by Chrysler, the United States government subsequently intervened as party-plaintiff, but nevertheless, the court held that:

"[T]he circumstance that Chrysler agreed with the United States to prosecute this suit does not vest it with an interest in the litigation—for, having already been reimbursed for the taxes it had paid under protest and having agreed that any amount recovered by it would be turned over to the United States, it had nothing to recoup by the suit nor does its failure to recover affect it adversely in any manner".

It is practically conceded by Langenfelder, as it must be, that the United States government, and not appellant, is the one ultimately entitled to any money recovered, and we, therefore, conclude that Langenfelder

is not the proper party plaintiff to bring this action for refund. Our conclusion on this phase of the case disposes of the matter, and we would not need to further lengthen this opinion by discussion of the third problem, but we feel that we must briefly comment thereon.

## III.

While we do not pass on the question of whether or not a sales or use tax could properly be *levied* on the sale or use of personal property as employed here, we are of the opinion that even though the proper party plaintiff were seeking this *refund*, it would have to be denied.

"On the grounds of public policy, the law discourages suits for the purpose of recovering back taxes alleged to be illegally levied and collected": 51 Am. Jur. Taxation 1004, §1167 (1944).

"The right to sue the Commonwealth for the recovery of money or taxes alleged to have been erroneously paid to it exists only by the grace of the Legislature. Article I, Section 11 of the Constitution of Pennsylvania provides: '. . . Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct'. An action against the Board of Finance and Revenue is an action against the State: Merchants' Warehouse Company v. Gelder et al., 349 Pa. 1, 7, 36 A.2d 444, 447, 448; Kaufman Construction Company v. Holcomb et al., 357 Pa. 514, 55 A.2d 534; United States of America v. Board of Finance and Revenue, 369 Pa. 386, 85 A.2d 156. Where a State through its Legislature consents to be sued, the modes, terms and conditions of the statute conferring such privilege and authorizing refunds must be strictly construed and followed: Ford Motor Co. v. Department of Treasury of Indiana et al., 323 U. S. 459 (1945); Georgia Railroad & Banking Co. v. Redwine, State Revenue Commissioner, 342 U. S. 299 (1952). Cf. Calvert Distillers Corporation v. Board of Finance and

Revenue, 376 Pa. 476, 103 A.2d 668; and see 49 Am. Jur., States, Territories, and Dependencies, §97, p. 314": Land Holding Corp. v. Board of Finance and Revenue, 388 Pa. 61, 65 (1957).

Langenfelder filed its petition for refund on March 19, 1963, the tax having been paid at various times from June 1961 through 1962. While the stipulation of facts does not indicate how much of the tax was paid, more than 18 months before the petition was filed an examination of the invoices, marked "Exhibit B", shows that approximately one-quarter, or about $4,000, was so paid. For this amount, a petition filed under section 553(A) of the Selective Sales and Use Tax Act, 72 PS §3403-553(A), would have been too late. Perhaps it was for this reason that Langenfelder elected, as it unquestionably did, to file its petition under section 553(d), 72 PS §3403-553(d).[4]

The section of the act under which appellant seeks a refund, then, in pertinent part reads:

"Notwithstanding any other provision of this section where any tax . . . has been paid under . . . *an interpretation of . . . [a] provision [of this act] subsequently held by . . . [a] court [of competent jurisdiction] to be erroneous,* a petition for refund may be filed either before or subsequent to final judgment, but such petition must be filed within five years of the date of the payment of which a refund is requested". (Italics supplied.)

To bring its claim within this section of the act, appellant must point to some interpretation of a provision thereof which has subsequently been held to be errone-

[4] Paragraph 8 of the petition for refund, "exhibit C" of the stipulation of facts, states: "This Petition for Refund is filed in accordance with Section 553(d)". It was also stipulated by the parties that if a refund were to be allowed, it should be in the amount of $17,057.92, which would be obviously wrong if appellant were proceeding under section 553(A) of the act.

ous. We believe he has failed in this regard. It is true he cites Commonwealth v. McHugh, 406 Pa. 566 (1962), and the parties have stipulated that it holds "that a construction contractor could obtain the public utility exemption in the Selective Sales and Use Tax Act, for materials incorporated into a public utility facility, pursuant to a *contract with a public utility* for the construction of such facility", but the record is silent concerning any previous interpretation that was erroneous. (Italics supplied.)

At all times important to the determination of this case, the act has imposed a tax on sales at retail, and the definition of "sale at retail" has been defined to exclude machinery, equipment and supplies used directly in "The producing, delivering, or rendering of a public utility service, or in constructing, reconstructing, remodeling, repairing or maintaining the facilities used in such service, whether or not such facilities constitute real estate . . ." (sec. 2 (j) (7) (c), 72 PS 3403-2 (j) (7) (c) ) ; and we have not been shown any regulation of the Department of Revenue or the sales tax board, or any interpretation by any other body to the contrary.

In Land Holding Corp. v. Board of Finance and Revenue, supra, Judge Chidsey points out, at page 73, in considering a petition for refund under section 503 (a) (4) of The Fiscal Code, 72 PS §503 (a) (4), which for our purposes here is identical with section 553 (d) of the Selective Sales and Use Tax Act, that to be successful the taxpayer must show that subsequent to its payment of the tax, the tax legislation in question was interpreted by a court of competent jurisdiction contrary to the board's interpretation. See also Federal Deposit Ins. Corp. v. Board of Finance and Revenue of Commonwealth of Pennsylvania, supra.

Section 553 of the Selective Sales and Use Tax Act requires also that the taxpayer show that the Common-

wealth was not rightfully entitled to the tax. It is not clear to us from the record whether the Commonwealth is rightfully entitled to this tax or not.

### CONCLUSIONS OF LAW

1. The Board of Finance and Revenue may, upon due application, hold a rehearing on a matter properly before it, if the decision thereafter is rendered within the period established by statute for the board to act finally.

2. Langenfelder, appellant, is not a proper party to bring this action for refund of sales taxes previously paid.

3. The taxes should not be refunded to appellant by the Commonwealth of Pennsylvania.

### ORDER

And now, to wit, August 30, 1965, the appeal of C. J. Langenfelder & Son, Inc., is dismissed, and judgment is directed to be entered in favor of the Commonwealth and against appellant in the amount of $17,057.-92. This entire tax liability having been previously paid, this judgment shall be marked satisfied upon payment of the costs, unless exceptions be filed hereto within 30 days. The prothonotary is directed to notify the parties or their counsel of this order forthwith.